Allen *v*. Woodward.

---

# ALLEN *v.* WOODWARD.

No action can be maintained upon a consideration, which appears to be past, unless it is alleged to be done by the assent or request of the defendant.

An action for timber sold cannot be maintained, when it appears that the taking was a trespass, without proof from which a contract of sale may be inferred.

One proprietor of common lands cannot maintain an action in his own name for any injury to the common property, nor can he discharge the claim of the proprietary.

ASSUMPSIT, in two counts. The first count was on the following account annexed to the plaintiff's writ:

Allen *v.* Woodward.

" Jacob Woodward to Samuel R. Allen, Dr.

April, 1850.　To thirty-five sixty-ninth parts of 360 spruce and hemlock logs, taken from the common rights of land in Conway, in the winter of 1849 and 1850, of which the said Allen owns thirty-five of the sixty-nine rights, making 182 $\frac{42}{100}$ logs, worth sixty-five dollars, $65.00."

The second count was as follows:

" Also, for that the said defendant, at said Conway, on the ninth day of April, A. D. 1850, in consideration that the plaintiff, being the owner of thirty-five sixty-ninth parts of the common right of land in Conway, and that the defendant had cut and carried away from said common rights, spruce and hemlock trees sufficient to make three hundred and sixty mill logs, then and there promised the plaintiff to pay him therefor what said trees were worth on the stump; and the plaintiff avers that said trees were worth sixty-five dollars."

To the second count there was a general demurrer, which was joined.

To the first count the defendant pleaded the general issue, and on the trial of this issue by the jury, the plaintiff stated his case to be, that the township of Conway was granted to sixty-nine original proprietors; that part of the land in the town remained common and undivided, never having been divided among the original proprietors, or their assignees; that the plaintiff, since August 10, 1834, has owned and still owns thirty-five of the original proprietary rights in the township; that in the winter of 1849 and 1850, the defendant entered without right on this common and undivided land, and cut and carried away spruce and hemlock trees, as charged in the declaration; that after the trees were so cut by the defendant, he promised the plaintiff to pay him his proportion of what the trees were worth on the stump.

The evidence of the plaintiff to prove the defendant's promise to pay the plaintiff for his share of the logs, consisted of the testimony of William K. Eastman, who testified as follows:

" I have acted for the last five years as Mr. Allen's agent for

46 *

his lands in Conway and Albany. He instructed me to call on those who cut timber on the common land in Conway, to settle.

" The 9th of April, 1850, I called on Mr. Woodward, and asked him if he had been getting timber on the common rights. He said he had somewhere about 300 or 350 spruce and hemlock logs — something over 300. I asked him what right he had; he said he had none, and asked me if I owned any of the common rights. I told him I did not; that I was agent for Mr. Allen, who owned a large proportion of them. He said, I have been and cut the logs, and am willing to pay for them; I will pay what they were worth on the stump; I will pay Mr. Allen for them. He then asked me what price Mr. Allen had set them at. I told him Mr. Allen had not set any price, but directed me to settle for what it was worth on the stump. He asked me what I set it at; I said I had not set any price, but would next week. He said he would come the next week, and pay what the timber was worth. I told him I could meet him in his own neighborhood. He said he wanted me to give him my word that I would not make any cost till he could pay as he had stated; and I did. He met me at the place appointed, but did not pay."

·The court being of opinion that on the title, stated as above by the plaintiff, and this evidence of the defendant's promise to pay for the timber he had cut and carried away, the plaintiff could not maintain his action on his first count, ordered a nonsuit, which the plaintiff moved to set aside, and for a new trial.

*J. Eastman*, for the plaintiff.

*Cutler*, and *Hobbs* & *Sanborn*, for defendant.

BELL, J. The second count is bad. The consideration as stated is past. Lawes Pl. 62, 63; 1 Saund. Rep. 264, n. 1; *Comstock* v. *Smith*, 7 Johns. 88. The act of taking the logs as alleged seems to have been a trespass. If it had been alleged that the trees were cut and carried away by the assent and permission of the plaintiff, the count would be sufficient, and proof

of the settlement would be admissible as evidence of such assent, if the plaintiff appeared to be a tenant in common of the land; because a ratification or subsequent approval is equivalent to a previous assent. *Ratihabitio retrotrahitur atque mandato equiparatur.* 18 Viner's Ab. 156.

The first count is substantially for goods sold and delivered. The evidence does not prove a sale. It merely proves a promise to pay damages for a trespass. If the plaintiff was the party entitled to receive the damages, and they had been paid, they would have compensated for the whole trespass, the breaking and entering, cutting the trees, and converting the logs; and the property of the logs would thereby pass to the defendant; but not upon any idea of sale. Here there was neither a payment nor any agreement to sell. The defendant promised to settle the trespass, and to pay the worth of the trees, but he did not do it. It was, at most, a talk preliminary to an adjustment, ending in nothing. The parties, in truth, never came to any agreement. One says, I will pay for the logs what they were worth on the stump. The agent of the owner said, he was directed to settle at what they were worth. Neither the agent nor the owner had fixed a price; he would fix a price next week. There the negotiation ended, the whole matter of the amount to be paid being left undetermined. They had not agreed. There was as yet no contract. Perhaps the offer to pay what the logs were worth, if it had been accepted, might have been a sufficient contract of settlement, but it was not accepted. The matter was postponed to a future meeting. The defendant exacted a promise not to make him cost till he could pay; and the parties did meet, but nothing further was done. The business was not completed.

But there is another objection of a more important character, which is, that the property of the land, and consequently of the timber, was not in the plaintiff, but in the proprietary. In *Atkinson* v. *Bemis,* 11 N. H. Rep. 44, it was held, that the title of a proprietor is merely of a share of the proprietary property, and the title to such share or right can be enforced only through the proprietary in their corporate name, until a partition of the land

has been made. And the same rule necessarily follows, as to actions brought for trespasses to the property. The plaintiff having no right of action in himself, had no power to compromise the claim for the trespass, or to release it ; and any adjustment by him, if such were actually made and completed, would not discharge the action of the proprietary, nor in any way affect it ; and, of course, upon the evidence, could not furnish any consideration for the promise declared on.

There must therefore be

*Judgment for the defendant.*